**Thomas Franklin HARDIN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44408.**

Court of Criminal Appeals of Texas.

Dec. 14, 1971.

Rehearing Denied Feb. 9, 1972.

Phillip Bordages, Beaumont, for appellant.

Tom Hanna, Dist. Atty., and John R. DeWitt, Asst. Dist. Atty., Beaumont, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

This is an appeal from a conviction of robbery by assault. The jury assessed the punishment at thirty-five years.

The appellant's sole contention is that "The Court should have permitted only challenges for cause thereby preventing the State from achieving an all-white jury through systematic exclusion of Negroes by peremptory challenges."

Appellant is a Negro, and the victim of the robbery is a white police officer. The petit jury, which tried the issue of guilt, was drawn from a panel of thirty-six persons, five of whom were Negroes. Four of the five Negroes on the panel were stricken by the State on its peremptory challenges, and one was excused as the result of illness.

The record reflects that three practicing attorneys from Jefferson County testified at the hearing on appellant's motion for new trial. Two of the attorneys, Johns and Willard, are Negroes, and Griffin is a former district attorney of Jefferson county. Johns testified in the cases he had tried, where the defendant was a Negro and the victim was a white, that the Negroes on the panel had been stricken by peremptory challenges, and that he had observed this in other cases in which he did not participate. On cross-examination, Johns stated, not knowing the District Attorney's mind, he was unable to say why the State struck the Negro people in the cases he was talking about. He further stated that such consideration as a person's intelligence, family background, economic status and occupation were sometimes considerations which influenced his exercise of peremptory challenges in cases he tried. The testimony of Willard, a law partner of Johns, reflects that he has tried many criminal cases; that all of his clients are Negroes, and in the cases where the injured party has been white and the defendant a Negro, the District Attorney has used his peremptory challenges to exclude members of the Negro race from juries. On cross-examination, he testified that he never struck a Negro from the jury panel for the reason that they relate better to people of their own race, and further that he considered intelligence, economic status, occupation, and probably religious background in selecting jurors. Like Johns, he testified that he had no personal knowledge why the District Attorney struck any particular jurors.

Griffin testified that, in his opinion, the State has used peremptory challenges to systematically exclude Negroes from the jury in cases where the defendant was a

Negro. In cross-examination, the record reflects:

"Q So you are not saying the State excluded Negroes from the jury only where there was a color barrier?

"A I would not say that is the only time they excluded them or struck them. I am sure the State is like us; we try to get the best jury we think would be in our favor."

It is undisputed that Negroes have served on petit juries in the trial of criminal cases in Jefferson County.

In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, the U. S. Supreme Court said:

"* * * we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, pro tanto, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

"In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it."

The court further stated that a claim of systematic exclusion of Negroes from serving on petit juries by the State's use of its peremptory challenges "raises a different issue and it may well require a different answer."

"We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. Cf. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory sys-

tem is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify."

In the recent case of United States v. Pearson, 448 F.2d 1207 (5th Cir., 1971), where it was claimed that the Government discriminatorily used its peremptory challenges to remove Negroes from the trial jury, the court, in discussing the burden of proof of systematic exclusion under Swain, said:

"The burden of proof faced by defendants is most difficult. It might require checking the docket for a reasonable period of time for the names of defendants and their attorneys, investigation as to the race of the various defendants, the final composition of the petit jury and the manner in which each side exercised its peremptory challenges. We can well understand how the present defendants' counsel were unable to produce additional evidence. In the six years which have passed since Swain, we have not found a single instance in which a defendant has prevailed on this issue."

In the instant case, the contention of systematic exclusion of Negroes is limited to cases where the defendant is a Negro and the victim is white. The testimony of the attorneys is based on their experience in cases which they have tried and observations they have made of other trials. There is an absence of proof as to cases in Jefferson County in which they were not participants or observers, and there is a complete absence of details regarding the cases upon which they base their opinions.

We conclude that the appellant has failed to show a systematic exclusion of Negroes from serving on petit juries by the State's use of its peremptory challenges.

The judgment is affirmed.

Opinion approved by the Court.